first argument on the calendar is United States v. Mack. Let me just make sure the lawyers are still here. Mr. Murphy, I can see you. Can you see me? Yes, your honor. You can hear me okay? Yes, your honor. Great. And Ms. Gregory? Yes. Let me just make sure I can see you. There you are. Perfect. Okay. And you can see and hear the panelists. All right. Yes. Okay. Great. So you've got 10 minutes each. And Mr. Murphy, you have reserved two minutes for rebuttal. So the floor is yours. You may proceed. Thank you, your honor. Good morning. May it please the court. Your honor's law enforcement ordered my client to leave his personal belongings, including the string bag containing marijuana behind as he was ordered from the vehicle on the day in question. This order, which began the process of removing Mr. Mack so he could be searched, occurred less than 40 seconds before Officer Melendez began rifling through his pockets. That search was characterized by the magistrate judge as deliberate, flagrant and objectively unreasonable. But for the order regarding the personal belongings in the vehicle, no drugs would have been found in the car and there would have been no search incident to arrest. But the district court applied. Mr. Murphy, I mean, did you make this order argument or was this argument made below in the district court? The court that argument was not made in the district court. The court did address inevitable discovery, but didn't address this factual argument. That's correct, your honor. We're ready for plain error, right? Well, we may I like to make an argument that plain error would not apply for this reason. And then I'll address plain error, judge, if you don't mind in that order. Because that because the district court applied the wrong standard, it did not apply the crucial component of addressing whether plausible contingencies would apply here. If the court applied the correct standard, it would have addressed these facts that we are addressing here on appeal. If the court does not accept that argument, let me go through the plain error analysis. This was a clear and obvious error. There is binding Second Circuit precedent that the district court's analysis contravened. We don't believe that it is reasonably debatable that the wrong standard was applied here. But let me just go ahead twice again. The special appendix eight, the district court recited that the magistrate found that there was probable cause to arrest. And then again, reiterated that there was probable cause for the search. There was not a specific finding of act that the officers would have actually arrested him for the marijuana was there? No, judge. But and let me ask you this at the time of this arrest. This ultimately turned out to be 19 grams of marijuana. Correct, judge. And that would have been under New York law unlawful possession of marijuana. Yes, judge. For which the officer had no option of writing an appearance ticket. Yes. Yes, your honor. It's a violation. It's not a it's not a it's not a misdemeanor. Right? Yes, judge. I'm following that. Yes. So the officer had a choice. And the officer there was the court found credible that as the officers approach that they they want at least smelled but said it wasn't a big deal. Correct. And then the and then they got the people out of the car. They are going to choose me they went back to the car after they got their identities. It's hard to take from the body cam. But obviously, they somehow, they decided that they were going to remove the people from the car. Correct? Yes, they did. They didn't say it was because of the smell of the marijuana. They didn't say that, did they? No, judge. And then they said, and then they patted him down. And I believe the government concedes that that frisk is illegal. Yes, your honor. Because no one had an articulable suspicion of fear or concern about their body, their safety. Correct. And after they found the weapon, then they searched the vehicle. And what I find most curious is that the the court finds at page eight of its the special appendix, it acknowledges that these statements were made. But it goes on and says, so regardless of what may have been said to either occupant about not caring about the marijuana, they told the occupants they didn't care. Leave me to believe maybe they were going to write him a ticket or something. The search itself contradicts such statements. So for some reason, after they found a weapon on Mr. Mack, they had they decided to do something different, which was to search the vehicle, I take it. Right. Now, but that doesn't answer the question, isn't the question that it's not the question whether they would search the vehicle. The question is whether they even if they had searched the vehicle, whether they would have arrested him, but for finding the gun. Right. Right. And judge, to interject this part, this court in in Heath in 2006, rejected this concept that other circuits have filed a reasonable probability. The question is not what a reasonable police officer do X is what would the would it in fact have happened? And this circuit as much stricter standard. And it's been described starting in Heath as to get it. What's your what's your what's your remedy, Mr. Murphy, if you're right, to send it back for them to make the appropriate findings? That's correct, Judge. That's correct. The substantial certainty standard in Heath, as opposed to the reasonable probability standard in the other circuits. This is that page 60 of Heath lists what the other circuits had done. Yeah, I'm familiar with what the court had, what had done here at page 443 and 444 was simply say there was probable cause to arrest their the inevitable discovery doctrine applies. And most fundamentally, the court looked at one contingency. If we look at page 446 of the Stokes decision, and this isn't used consistently, but it's plausible contingency. There was for sure another plausible contingency here. My client was on his way out of the car with the bag in his hand. And that just question or two about getting out of the car. I mean, your view is that the officer did not have the right to tell people after he orders him out of the car not to carry all sorts stuff with them. No, my point is that that that act by the officer directly facilitated an illegal arrest. And it was a demonstrated historical fact that the district court had to consider in analyzing inevitable discovery. There's no question, Judge, that a police officer may order a front passenger out of the vehicle. You need reasonable suspicion to search. I'm not saying it was illegal in a vacuum. If we cherry pick this fact out to order someone out of the vehicle. In this context, it facilitated directly facilitated a flagrant illegal search. But there was nothing wrong with telling him to leave the bag in the car in and of itself, right? The illegal search had not occurred at that point. So it's okay to say leave the bag in the car. In a vac. I'm sorry, Judge. In a vacuum, I would agree with that. And that's one plausible contingency that can be considered by the district court in a vacuum. But under these circumstances, it's not a contingency, though, is it? It's an actuality. The officer said, leave the bag in the car. And there's nothing wrong with that. And in a vacuum that I would agree with that, I wouldn't agree with it under these circumstances, because I don't know why it matters. I don't understand why it matters. I don't understand why you're going down this road, because it just confuses things. The question here is, is that, is taking the finding of the gun on him aside, because they're not allowed to use it, that's not part of the probable cause analysis. There's a conceded Fourth Amendment violation. The question is, would they have inevitably discovered it? The gun can't be part of probable cause. All it can be part of probable cause is the initial smell of the marijuana and then the looking for the marijuana to search the state, right? Isn't there also a statement statement that it's his correct? Yeah, you're right. You're absolutely right, Judge Sullivan. Okay. And so then but then the question becomes, notwithstanding that and finding it, would he have been arrested for it at a time when the officer had a choice? The officer had a choice between issuing an appearance ticket or arresting it. And we don't know that the questions that the court made no conclusion as to that, did it? That's correct, Judge. And that's why we asked that it be remanded. I do say I'm over by 25 seconds. I appreciate that. All right. Well, are there any other points you wanted to make when we've only focused on the search? Oh, not until rebuttal, Judge. No, thank you. Okay. All right. Thank you. We'll now hear from Ms. Gregory for 10 minutes. Good morning. May it please the This panel should affirm the judgment. First, the district court acted well within its discretion when it admitted documentary evidence, proving Mr. Mack's knowledge of his status as a felon. Second, the jury instructions regarding that knowledge on count four were correct, post-Rahaif. And third, the gun in Mr. Mack's pocket was admissible through the doctrine of inevitable discovery. I would like to start with that motion to suppress since it seems to be where the panel is focusing. So I think that the correct place to start, as your honors noted, is before the unlawful pat down. Before they did that, both officers had smelled marijuana. The driver had confirmed that smell and suspicion when she was asked if someone had been smoking weed in the car, she said, probably so. Based on the smell and the confirmation from the driver, before we get to anything else in this timeline of events, the officers had a probable cause to search the car. And they did, in fact, search the car. And they did, in fact, arrest Mr. Mack. And I would like to note, I would have to check the arrest paperwork, your honor. I know that they, as they were discussing, I've just recently watched the video. They were discussing what to charge him with on the marijuana. Now in 2017, I'm not sure, and I would have to refer to my penal code, whether or not that had been downgraded to a desk appearance ticket. I think if you check, you'll find it that it was. I would defer to your honor. All right. Well, I might be wrong. And you better check because complacency is the friend of error. But I checked. Now, presume that there was. Presume they had a choice to give him an appearance ticket and you can't use the gun. He hasn't found a gun now. So they're going to take him into, in for less than 25 grams of marijuana in Rochester, New York. Yes, I believe it was 19 grams. Yeah, he was charged. He was indicted in this case with intent to sell federally. So I would, I would submit that at that point he was arrested for the marijuana charge. They were discussing whether or not in the video. I would suspect there was a good reason because if they didn't, inevitable discovery is, is trash. They weren't discussing, in fairness, they weren't discussing whether they could get this in through inevitable discovery when they were making the arrest. I'm sure they didn't figure that out, but I, but it seems odd to me. They smell marijuana. Oh, are you still there? Yes. Okay. I can't see you. It seems odd to me. They smell marijuana. They tell everybody it's no big deal. They go back to the car and all of a sudden everybody gets out of the car. They go back to the cruiser and now everybody gets out of the car and they pat him down. Do we know if they ran a record check on Mr. Mack when they were in the car in the cruiser? You can see them doing it. I believe they type, they're typing his name in and you can see them. So they became aware of the fact that he was a felon? I don't know that they were aware that he was a felon at the time that they arrested him. Did they, but they didn't offer the fact that he was a felon or that they were concerned about his prior record or that he somehow was acting suspiciously to pat him down. They used RPD policy to justify that, right? That's correct. And I don't think at this point where we're really arguing about the findings, about the unlawfulness of the pat down. I think we are just focusing on what happened prior to that. But I'm sorry. Now they find a gun and, but the gun, you can't use the gun to make it, to be part of the calculation, whether they're going to arrest him for less than 25 grams of marijuana, right? Yes, but they did arrest him for the marijuana, I believe. And they did, he was charged with the marijuana charge. So the question isn't whether they did, whether they would have had they not found the gun, right? Correct. That's what an inevitable discovery is all about. Yes. But here I would draw a distinction from Stokes. Stokes, the inevitable discovery doctrine there, as this court knows, was predicated on actions that might've been taken by third parties, but those contingencies were far outside this kind of situation. I'll give you an example. So there the court was, the district court had said, maybe the hotel manager would have called police. Maybe the all of this is inherently speculative, of course, and very different. This court noted from standardized established procedures like inventory searches, or I would submit searches incident to arrest. The question is still, would they have arrested him just for the marijuana right before they found the gun? It's not an objective. It's not like a Devon test. Could they have arrested him? It's would they have for inevitable discovery, right? Yes. And I think we look at what they did. So they approached the car, then they came back and then they approached again. And that's when they asked everyone to get out. When they came back, officer Giancursio immediately said, I smelled marijuana. Did you smell that? And then as they discuss it for like a couple of seconds and then they get back out and Melinda says, we're going to pull them out. And he says, yes. So I would submit that they had, and as Mac appears to concede in his appellate brief, they had decided they were going to search the car at that point. Well, but they, the way he said, they said they were going to search the car for guns and drugs. That's what they said during the hearing. And they had no reason to believe that there was a gun in that car at that time. They had no reason to believe that there's no probable cause for that. The probable cause finding by judge Feldman, this is that he might have, they smelled marijuana and yet they had told everybody and judge and judge Wolfer found them to have been credible that they actually did say, Oh, don't worry about that. We don't care. That's not a big deal to us now. So they did say that. Yes. But we, as this court recently held in Weaver, we look at objectiveness, not subjective intent of the officers and objectively, did they have probable cause to believe there was marijuana? Yes. And were they going to search the vehicle? Yes. Weaver, I understand Weaver and on the issue of probable cause, you're absolutely right. But that's not what is, that's not the question in inevitable discovery, is it? No, it's what would it have been discovered if they had, um, if, if, can you tell me where judge Feldman made that finding that they, that they would have, that they would have been arrested them. He said they had probable cause. He never makes a finding, nor does judge Wolfer. She says, um, the court agrees with judge Feldman's conclusion. This is a page eight second from the bottom paragraph court agrees with judge Feldman's conclusion that probable cause to search and of the minivan discovery of the marijuana. And therefore the firearm would have been inevitably discovered. She didn't say, and that they would have arrested him for marijuana on, on page, uh, special appendix nine. It says officer Jen Garcia testified that based on the discovery of the fresh marijuana on the search of the minivan defendant would have been arrested for possession of marijuana and searched substitute subsequent to the arrest. So that's where that finding is made, at least by the district court. So the district court notes that specifically on essay nine. So I, I, and I think that the reason that they, they didn't explore that further is because it wasn't contingent. It wasn't theoretical. He was arrested for the marijuana and he was charged with it. It wasn't, it wasn't like they threw that out with a violation or, or didn't even bother to charge it as sometimes as the case, if they find a gun, sometimes they don't care about the marijuana, but whether or not they said they cared about it, whether that was, um, you know, trickery of some kind to, to, to, to convince him to, to cop to it or whatever it was objectively, he, he was arrested for the marijuana and officer Gian Cursio testified to that. And it's noted in the district. I believe that's the district court's opinion in the special. Let me ask you one other thing. Did, did the defendant make this argument to judge Wolford make the inevitable discovery argument to judge Wolford? They did argue about inevitable discovery, but the argument about that, that, that Heath requires actually would have a rest. I don't believe that that argument was made now. Okay. I would just like to briefly address the right issue if I, if I could. Um, so with, with, and I'd like to focus not on the jury charge itself. I believe that no other court of appeals has agreed with Mr. Mack's position that there's somehow a willfulness requirement here. Um, not the sixth, seventh, 10th, third circuits. None of them have agreed with this approach. So as to the knowledge of the prior conviction, it was within its discretion to admit these transcripts and fingerprints for the purpose of proving his knowledge after, after the, uh, other charges had already been considered. This was a bifurcated proceeding. Um, every time Mr. Mack brings up prejudice in his brief, it's in relation to that marijuana charge, but the marijuana charge had already been considered convicted. And we're done with that part of the trial before the jury ever even heard about any of this other, um, and I would submit that the government didn't just have to prove the existence of this conviction. It had to prove the knowledge of that conviction beyond a reasonable doubt. And the district court was onto something when it noted that the nature of this offense is relevant. Pleading guilty to a traffic ticket is not nearly as memorable as pleading guilty to a drug offense. And that's exactly the point that judge Wilford made when she decided to admit the transcripts and certain things I would note were redacted here. The words dangerous drugs were taken off of the fingerprint card. Um, the criminal history report that was attached and certified along with that fingerprint card was removed. Um, and I believe that the district courts, um, kind of balancing of these factors and putting the government to its proof certainly was within its discretion. So unless the panel has any other questions, um, we would ask that they affirm the judgment. Thank you very much. Okay. Thank you, Mr Murphy. You've got two minutes. Thank you, Your Honor. Um, I believe the government is still applying this reasonable probability standard for inevitable discovery, which is what the district court I believe was following, which is why we believe that this should be remanded for finding that regard. But we do have a factual finding that the council recited to us that the district court said it would have occurred, right? That was found in the district court. That's true, and there's evidence pointing the other way. But do we have authority to second guess the district court on that finding? We definitely have authority, I believe, and I would even use Stokes that a full analysis of plausible contingencies was not done here. Um, when she describes a speculative approach in Stokes that this court warned about, I don't believe that includes the analysis that included Mr Stokes was in a motel room, and he could have left with the guns, and his roommate could have come back, and his roommate could have left with the guns. He could have left the guns there. That kind of analysis wasn't done here. I do recognize on page nine of the special appendix, as council noted, I do not think it's the full analysis that's required by this court, though, for inevitable discovery. May I make just one comment, just about point two, very quickly. It is true that there were redactions made. Our point in what was admitted in place before the jury was that it wasn't necessary to make this guy out to be a drug dealer. There's case law from this court addressing the plea allocutions, the length of time that someone may spend in custody as helping to establish that knowledge under rehab, but it wasn't necessary to put in front of the jury. I think it was 10 times during the plea allocution from Albany in 2007 that he was described as selling drugs. That just wasn't necessary, and that was our point in point two. Well, at that point, he's already been convicted of the marijuana possession with intent to sell, right? That's true, your honor. It wasn't. That would suggest that any prejudice is going to be pretty minimal. They're not going to use a propensity. They're not going to fall into propensity errors, right? They're not going to between the charges. That's true, but he's still going to be seen as someone who has been selling drugs for years as opposed to just possessing them under the indictment. But there was no, I mean, he refused to stipulate, and so the government had to prove that he knew he was convicted, knew what the penalties were, and that that's not something he would have forgot. So is the nature of the crime relevant? No, the actual crime itself is not. What's relevant is that he knew that he had been convicted of a crime that was punishable by more than a year. That could be done by addressing the length of time that someone spends in custody, and even that there was a plea allocution, the actual crime itself was not necessary. The fact that it was the selling drugs, it could have been any felony. But how did it hurt? How did it hurt? Because the jury is seeing someone who was a drug dealer as opposed to someone who was just possessing drugs. That's so narrow. It's did he have a felony conviction, yes or no? Right, that's true, Judge. I'm just saying that the idea of making this guy out to be a seller of drugs is fundamentally different from just possessing drugs. All right. Nice on your point. Okay, so thank you. We have your arguments. We will reserve decision. Thank you both. Well argued.